# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| JERRI A. O'ROURKE, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:12-CV-04218-DGK-SSA |
| CAROLYN W. COLVIN,[1] Commissioner of Social Security, | ) |
| Defendant. | ) |

## **ORDER AFFIRMING COMMISSIONER'S DECISION**

Plaintiff Jerri O'Rourke ("O'Rourke") seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.* The Administrative Law Judge ("ALJ") found that although O'Rourke suffered from several severe impairments, including atrial fibrillation, diabetes, a history of breast cancer and deep vein thrombosis, and the residual effects of a cerebrovascular accident, she retained the residual functional capacity ("RFC") to perform her past work as a sewing machine operator.

After careful review of the record, the Court holds the ALJ's decision is supported by substantial evidence, and the Commissioner's decision is AFFIRMED.

## **Factual and Procedural Background**

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her application for disability insurance benefits on May 16, 2005, alleging a disability onset date of May 5, 2000. Plaintiff alleged disability due to heart problems,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant.

tachycardia, high blood pressure, high cholesterol, diabetes, a history of breast cancer, and a stroke that occurred on May 4, 2005. Plaintiff's insured status under Title II expired on December 31, 2005, thus, the relevant time period for consideration in this case is from May 5, 2000, through December 31, 2005.

The Commissioner denied Plaintiff's application for benefits at the initial claim level, and Plaintiff appealed the denial to an ALJ. On August 8, 2007, the ALJ held a hearing and on August 24, 2007, issued his decision holding Plaintiff was not disabled as defined in the Act. On October 15, 2009, the Appeals Council remanded the case for a new hearing, and the case was assigned to a new ALJ. The new ALJ held a hearing and on July 21, 2010, issued his decision concluding Plaintiff was not disabled.

On June 25, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**Standard of Review**

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls

outside of the available "zone of choice," and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

**Analysis**

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[2] Plaintiff argues the ALJ erred at step four by finding that she could perform her past relevant work as a sewing machine operator.

The ALJ found that as of, December 31, 2005, Plaintiff had the RFC to perform sedentary work except she could not climb ropes, ladders, scaffolds, stairs or ramps, but she could occasionally balance, stoop, kneel, crouch, or crawl. R. at 17. She must also work in a temperature controlled environment, avoid unprotected heights, concentrated exposure to fumes, and pulmonary irritants. *Id.* The ALJ found that even with these restrictions, she could perform her previous work as a sewing machine operator. R. at 22. The Court finds substantial evidence on the record supports this determination.

---

[2] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. *King*, 564 F.3d at 979 n.2. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *Id.*

**I. Substantial evidence supports the ALJ's finding that Plaintiff's testimony concerning her RFC was not credible.**

The ALJ's evaluation of a claimant's credibility is crucial to the RFC determination because it influences the inclusion or exclusion of alleged limitations. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In analyzing a claimant's subjective complaints of pain, the ALJ considers the entire record, including medical records; statements from the plaintiff and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Credibility questions concerning a plaintiff's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003).

Here, the ALJ articulated several well-supported reasons for discounting Plaintiff's credibility. R. at 17-23. To begin, Plaintiff's reported symptoms were inconsistent with the objective medical evidence and her own reports to her doctors. For example, although Dr. Muthu Krishnan, M.D., diagnosed Plaintiff with atrial fibrillation in May 2000, R. at 438-41, he effectively treated Plaintiff's condition with blood-thinning medications and a successful cardioversion[3] later that month. R. at 441, 448-49. The next month, Dr. Krishnan observed that Plaintiff was "doing extremely well" and had no continuing physical symptoms or shortness of breath. R. at 448. Plaintiff's medical records reflect no significant treatment for her heart condition for the next two years. R. at 451. In June 2002, Plaintiff reported that she had "occasional skips but no real recurrence" of her heart symptoms, and she asked if she could discontinue her heart medication. *Id.* Dr. Krishnan concluded Plaintiff's heart rhythm and function were normal. *Id.* Subsequently, Plaintiff's physicians repeatedly observed that her

---

[3] Cardioversion is restoration of normal rhythm of the heart by electrical countershock. PDR Medical Dictionary 283 (1st ed. 1995).

4

heart rhythm and function were normal and "well controlled" with medication. *See, e.g.*, R. at 247-48, 361.

Similarly, in February 2003, Plaintiff was diagnosed with a pulmonary embolism in her lower-left lung. R. at 272-90. Plaintiff's doctors prescribed blood-thinning medications and further testing and her condition improved significantly. R. at 274, 279-80. In April and May 2003, Plaintiff reported she was doing "very well" and not experiencing any problems. R. at 567-69. She subsequently reported no physical complaints on numerous other occasions. R. at 409, 413, 417-18, 420. In December 2003 and April 2004, Plaintiff reported that she felt "fine" and had no complaints, R. at 462, 572, and she discontinued taking her anticoagulant medication in February 2004. R. at 409. Obviously, this suggests her impairments were not disabling as Plaintiff has alleged, *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (noting an impairment which can be controlled by treatment or medication is not disabling), and detracts from her credibility.

The ALJ also considered the fact that Plaintiff alleged debilitating shortness of breath and heart disease, but continued to smoke a pack or more of cigarettes per day throughout most of the relevant period. R. at 21, 247. A claim of disabling respiratory impairment is inconsistent with claimant's continued smoking. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). In fact, her doctors repeatedly instructed her to discontinue smoking due to her condition and the risk of blood clots, but she repeatedly stated she was not interested in stopping. R. at 307, 358, 409.

Finally, substantial evidence supports the ALJ's determination that Plaintiff was able to perform significant activities of daily living during the relevant period. R. at 21. During the relevant period, Plaintiff performed light cleaning, washed laundry, played computer games, watched television, visited her sister that lived across the street, went to the bowling alley to watch family members bowl, and drove. R. at 189, 542, 645, 844. Prior to May 2005, Plaintiff

5

reported that she was "active at times" and used a "stepper" for exercise at home. R. at 473. Since these activities are inconsistent with Plaintiff's allegations that her impairments prevented her from performing sedentary work, they detract from her credibility. *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

Because the ALJ articulated the inconsistencies that undermined Plaintiff's subjective complaints and these inconsistencies are supported by the record, the Court affirms the ALJ's credibility determination. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

## II. Substantial evidence supports the ALJ's finding that Plaintiff retained the RFC to work as a sewing machine operator.

Plaintiff's argument appears to be that the ALJ erred in evaluating the evidence and should have incorporated additional limitations into the RFC assessment, including finding that Plaintiff suffered from weakness in her right arm, needed to lie down for extended periods of time during the day, and needed a cane to walk. The Court's role, however, is not to reweigh the evidence or try the issues de novo, but to determine whether substantial evidence supports the ALJ's decision. *Howe v. Astrue*, 499 F.3d 835, 839 (8th Cir. 2007).

The record supports the ALJ's finding. As discussed above, Plaintiff's testimony concerning her impairments was not credible. The record also supports the ALJ's decision not to include specific limitations in the RFC related to Plaintiff's right arm, need to lie down, or use of a cane. Although Dr. Scott Marrs, D.O., made a conclusory assertion in September, 2007, that Plaintiff had "slight" weakness in her right arm,[4] R. at 737, Dr. R. Stoecker[5] submitted a more detailed report which found Plaintiff had no significant limitation in her ability to lift or manipulate objects. R. at 610-12, 614. There is also no evidence that for more than twelve

---

[4] In the letter, Dr. Marr's stated that Plaintiff had persistent weakness in her left side. Apparently, this was an error. When asked about this discrepancy during the hearing, Plaintiff had no explanation. R. at 878.

[5] It is unclear from the record whether Dr. Stoecker is a medical doctor or an osteopath.

months, Plaintiff needed to lie down for extended periods of time during the day. Finally, Plaintiff's testimony that she needed a cane to walk is thoroughly rebutted by the record: Dr. Marrs observed in February 2003 that she walked with a normal gait, R. at 274; her husband and daughter-in-law stated in June and August of 2005 that she did not need a cane to walk, R. at 191, 200, 208; and as late as April, 2006, Dr. Timothy J. McDermott, M.D., observed that she walked "unassisted." R. at 645.

The ALJ considered the VE's testimony in conjunction with Plaintiff's age, education, work experience, and RFC, and properly concluded that Plaintiff could perform her past work as a sewing machine operator. R. at 22, 849-50, 879-82. Although Plaintiff contends the ALJ did not make explicit findings regarding the functional demands of her past relevant work, the ALJ referenced in his decision both the VE's and Plaintiff's testimony regarding the functional demands of her past work as a sewing machine operator. R. at 22. Plaintiff testified that her past work required her to lift only three or four pounds and use a machine while seated. R. at 862, 879. She also admitted that she could sit without difficulty and lift at least five pounds. R. at 874. The VE testified that she had reviewed the record, which included Plaintiff's statements that her past work as a sewing machine operator required "no lifting," sitting for up to 8 hours a day, and no walking, standing, stooping, kneeling, crouching, or crawling. R. at 168, 180-83, 849, 879. Given that these were the requirements for Plaintiff's past work, the ALJ did not err in finding that she could still work as a sewing machine operator. Consequently, substantial evidence supports the ALJ's decision.

**Conclusion**

For the reasons discussed above, the Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: January 27, 2014         /s/ Greg Kays
                               GREG KAYS, JUDGE
                               UNITED STATES DISTRICT COURT